IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.    No.  CR 15-1504 JB

JOSEPHINE DURAN,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to PSR and Request for Evidentiary Hearing, filed February 22, 2016 (Doc. 71)("Objections").  The Court held a sentencing hearing on April 14, 2016.  The primary issue is whether the Court should impose a 2-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3A1.3, because a victim was physically restrained in the course of the offense.  The Court will overrule Defendant Josephine Duran's objection and impose a 2-level enhancement under U.S.S.G. § 3A1.3.[1]

---

[1] Duran made three additional objections to the Presentence Investigation Report (dated December 18, 2015), disclosed December 18, 2015 ("PSR"), which the Court overruled in part and sustained in part at the April 14, 2016, sentencing hearing.  Objections at 2-7.  First, at the sentencing hearing, the Court sustained in part Duran's objection to the PSR's factual statement suggesting that Duran "cased" the pharmacy before Gallardo robbed it at gunpoint, Objections at 2, explaining that it would leave the PSR as is, i.e., that a witness said she cased the pharmacy, but that it would make a finding by a preponderance of the evidence that there is insufficient evidence to establish that Duran was in the pharmacy before the robbery, see Clerk's Minutes at 2, filed April 14, 2016 (Doc. 85)("Clerk's Minutes").  The Court instructed this finding to be added to the PSR.  See Clerk's Minutes at 2.  Second, at the sentencing hearing, the Court overruled Duran's objection to the PSR's failure to apply a mitigating role reduction pursuant to U.S.S.G. § 3B1.2.  See Clerk's Minutes at 2.  Finally, with respect to Duran's objection to the PSR's recommendation that Duran pay community restitution in the amount of $500.00, see Objections at 6-7, the Court concluded at the sentencing hearing that the United States Probation Office ("USPO") can make recommendations for the imposition of restitution and that the Court

## **FACTUAL BACKGROUND**

The Court takes its facts from the Presentence Investigation Report (dated December 18, 2015), disclosed December 18, 2015 ("PSR"), which the United States Probation Office ("USPO") prepared.  On January 30, 2015, Duran and Co-Defendant Blake Gallardo conspired to possess and traffic oxycodone by stealing the pre-retail prescription medication from the Walgreens Pharmacy on Paradise Boulevard in Albuquerque, New Mexico through the use of violence and force.  See PSR ¶ 12, at 5; Addendum to the Presentence Report at 1 ("First Addendum").  On that date, law enforcement was dispatched to the Walgreens Pharmacy in reference to an armed robbery where prescription medication was taken at gunpoint.  See PSR ¶ 13, at 5.  Gallardo entered the store alone and approached the pharmacy counter.  See PSR ¶ 22, at 7.  Duran knew in advance that Gallardo was going to rob the store.  See PSR ¶ 22, at 7.  "Gallardo jumped over the pharmacy counter and held a gun to a pharmacist, demanding her to give him all of the oxycodone pills."  PSR ¶ 13, at 5.  The pharmacist did not respond, and Gallardo took her keys and ordered the employees to get on the ground.  See PSR ¶ 13, at 5.  "He grabbed the pharmacist and threw her on top of another employee".  PSR ¶ 13, at 5.  He then opened a locker, grabbed a nearby bag, and filled it with bottles of oxycodone, which he took from the locker.  See PSR ¶ 13, at 5; id. at ¶ 22, at 7.  "Gallardo told the pharmacist 'oh you hit the button bit*h?  your dead now.'"  PSR ¶ 13, at 5.  "The employees were uncertain what prompted the anger from Gallardo, who then jumped back over the counter and fled."  PSR ¶ 13, at 5.

---

will determine if it will impose such restitution when it announces the sentence, Clerk's Minutes at 2.  This Memorandum Opinion and Order addresses only Duran's objection to the PSR's imposition of a 2-level enhancement under U.S.S.G. § 3A1.3, see Objection at 2-4, and memorializes the Court's oral ruling that it overrules this objection, see Clerk's Minutes at 2.

"Around this time, a deputy of the Bernalillo County Sherriff's Office was going to stop a speeding vehicle, but the deputy lost sight of it." PSR ¶ 14, at 5. "It was suspected Gallardo was in this vehicle." PSR ¶ 14, at 5. Gallardo was located a short time later and he fled in a vehicle as soon as law enforcement approached. See PSR ¶ 14, at 5. Gallardo almost hit a law enforcement vehicle while he was fleeing. See PSR ¶ 14, at 5-6. He was driving erratically at a high rate of speed, at times over 100 miles per hour, and he had no headlights on. See PSR ¶ 14, at 5-6.

> As the vehicle was fleeing, Gallardo attempted to discard his jacket and other items out of the vehicle. Gallardo then crashed his vehicle into a parked vehicle and fled on foot. Gallardo's vehicle had heavy damage to the front end of the vehicle. The parked vehicle's rear bumper was hit and appeared to have crashed into the rear bumper of another vehicle. Gallardo was arrested after a brief foot chase in a neighborhood. Several loose pills and a bag containing a large number of pills and a gun were also located. Josephine Duran was located hiding under a bush near where the bag and gun were recovered. She was subsequently arrested. The victims were shown a picture of Duran and they believe she was at the store earlier that day, possibly casing the business.[2] Some of the pills got wet from the rain/snow and dissolved.

PSR ¶ 15, at 6 (footnote added).

Duran stated to police that she was homeless and that she was looking for her cousin's house. See PSR ¶ 16, at 6. Duran advised she could not find the residence, so she laid under a bush to try to stay warm. See PSR ¶ 16, at 6. She denied any knowledge about the robberies. See PSR ¶ 16, at 6. She declined to provide any further statement. See PSR ¶ 16, at 6. A search of the area revealed a purse belonging to Duran which Gallardo had thrown from the vehicle.

---

[2] As stated in footnote 1 of this Memorandum Opinion and Order, with respect to Duran's objection to the PSR's suggestion that she "cased" the pharmacy before Gallardo robbed it at gunpoint, the Court explained at the sentencing hearing that it would leave the PSR as is, i.e., explaining what the witnesses said, but that it would make a finding by a preponderance of the evidence, that there is insufficient evidence to establish that Duran was in the pharmacy before the robbery. Clerk's Minutes at 2. The Court instructed the USPO to add this finding to the PSR. See Clerk's Minutes at 2.

See PSR ¶ 16, at 6.  Duran was arrested at the scene of the parked car while in possession of the bag containing stolen pills, which Duran intended to redistribute, and the handgun, a .40 caliber Smith & Wesson loaded with five bullets.  See PSR ¶ 23, at 7.  Gallardo reported that he did not have any information on any pharmacy robberies.  See PSR ¶ 17, at 6.  He stated that police arrested him because of his race, and denied that he or Duran committed any robberies.  See PSR ¶ 17, at 6.  "The jacket Gallardo wore during the robbery was located in the area and the pharmacy keys were located inside his vehicle."  PSR ¶ 17, at 6.  He had several active warrants for his arrest.  See PSR ¶ 17, at 6.

## PROCEDURAL BACKGROUND

On April 28, 2015, a five-Count indictment was filed in the United States District Court for the District of New Mexico, charging Duran with the following: (i) interference with and conspiracy to interfere with interstate commerce by robbery and violence under 18 U.S.C. § 1951(a), and aiding and abetting under 18 U.S.C. § 2; (ii) brandishing, using, carrying and possessing a firearm during and in relation to and in furtherance of a crime of violence and a drug trafficking crime under 18 U.S.C. § 924(c); (iii) robbery involving controlled substances under 18 U.S.C. §§ 2118(a)(1) and (c)(1), and aiding and abetting under 18 U.S.C. § 2; (iv) theft of medical products under 18 U.S.C. §§ 670(a)(1) and (b)(2)(A) and (B), and aiding and abetting under 18 U.S.C. § 2; and (v) possession with intent to distribute oxycodone under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and aiding and abetting under 18 U.S.C. § 2.  See Indictment, filed April 28, 2015 (Doc. 2)("Indictment").  On September 24, 2015, an Information was filed, charging Duran with Theft of Medical Products, in violation of 18 U.S.C. § 670(a)(6), 18 U.S.C. § 670(b)(2)(A) and (B), and 18 U.S.C. § 670(c)(3) occurring on January 30, 2015.  Information, filed September 24, 2015 (Doc. 45).

On that same date, September 24, 2015, Duran pled guilty to "Count 5 of the instant Indictment charging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), that being Possession with Intent to Distribute Oxycodone and a one-count Information charging a violation of 18 U.S.C. §§ 670(a)(6) and (b)(2)(A) and (B), that being Theft of Medical Products." Plea Agreement, filed September 24, 2015 (Doc. 48)("Plea Agreement"). In the Plea Agreement, the parties stated, among other things:

   a. The Defendant and the United States have made an AGREEMENT pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a specific sentence within the range of 48 to 100 months imprisonment is the appropriate sentence in this case. This agreement takes into account the Defendant's acceptance of responsibility, with no further reduction to occur. The remaining components of the Defendant's sentence, including but not limited to any fine or restitution and the length and conditions of supervised release, shall be imposed by the Court after the presentation of evidence and/or argument by the parties.

   b. If the Court accepts the plea agreement, it must inform the Defendant that the agreed upon disposition will be included in the judgment, and the Court is bound by the terms of the plea agreement once the Court accepts the plea agreement.

Plea Agreement ¶ 14, at 5-6. The Plea Agreement also states the following regarding Duran's appellate rights:

The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, including any fine, imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court. In addition, the Defendant agrees to waive any collateral attack of the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

Plea Agreement ¶ 19, at 7. The Court held a sentencing hearing on April 14, 2016.

## **RELEVANT LAW REGARDING THE GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)   to afford adequate deterrence to criminal conduct;
>
> (C)   to protect the public from further crimes of the defendant; and
>
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551. To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available

sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to considerable deference.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007).  Instead, the trial court must undertake the § 3553(a) balancing of factors without any

presumption in favor of the Guidelines sentence. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has found that the case of an illegal immigrant who re-enters the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted. See United States v. Alemendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.). On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and its Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi v. New Jersey</u>, 530 U.S. at 490. In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in <u>Apprendi v. New Jersey</u>, stating that the "statutory maximum for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted)(citations omitted)(internal quotation marks omitted). In <u>United States v. Booker</u>, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "<u>Apprendi</u> does not apply to the present advisory-Guidelines regime." <u>United States v. Ray</u>, 704 F.3d 1307, 1314 (10th Cir. 2013). See <u>United States v. Booker</u>, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of <u>Apprendi</u>'s requirement." (alterations omitted)(internal quotations marks omitted)). The Supreme Court has recently held that the requirements in <u>Apprendi v. New Jersey</u> apply to facts that increase a defendant's mandatory minimum sentence. See <u>Alleyne v. United States</u>, 133 S. Ct. 2151, 2155 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement findings analysis. See 408 F.3d at 684-85. United States v. Magallanez involved plain error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine. See 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines. See United States v. Magallanez, 408 F.3d at 682. The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months. See United States v. Magallanez, 408 F.3d at 682-83. The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684. Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11

F.3d 1510, 1516 (10th Cir. 1993)).[3]  "[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in Apprendi v. New Jersey."  United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.).  The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction."  United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005).  Accord United States v. Ray, 704 F.3d at 1314.  A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum.  See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, No. 12-5016, 2014 WL 6679446, at *6

---

[3]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation).  See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

(10th Cir. Nov. 25, 2014)(unpublished)[4](holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence"). The Court has noted:

> The Court explained that, although the decision of the Supreme Court of the United States in Alleyne v. United States, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from Apprendi v. New Jersey, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. Aug. 29, 2014)(Browning, J.)].

United States v. Cervantes-Chavez, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov. 3, 2014)(Browning, J.).

## **ANALYSIS**

The Court will overrule Duran's objection to the PSR's application of a 2-point enhancement under U.S.S.G. § 3A1.3, because a victim was physically restrained in the course of the offense. United States Sentencing Guidelines § 3A1.3 states that, "[i]f a victim was physically restrained in the course of the offense, increase [the offense level] by 2 levels."

---

[4]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that United States v. Hendrickson has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

U.S.S.G. § 3A1.3.  Duran does not contend that a victim was not physically restrained in the course of the offense.  As the PSR notes:

> Gallardo jumped over the pharmacy counter and held a gun to a pharmacist, demanding her to give him all of the oxycodone pills.  The pharmacist did not respond and Gallardo took her keys.  Gallardo ordered the employees to get on the ground.  He grabbed the pharmacist and threw her on top of another employee.

PSR ¶ 13, at 5.  In its summary of the offense conduct, the PSR further states: "During the robbery, the co-defendant demanded the victim give him all the pills at gunpoint.  He then grabbed her and threw her on top of another employee."  PSR ¶ 36, at 9.  Instead, Duran asserts that the application of an enhancement under U.S.S.G. § 3A1.3 is foreclosed, because "physical restraint" is an element of his crime of conviction.  Objections at 2-4.

Application Note 2 to U.S.S.G. § 3A1.3 states: "Do not apply this adjustment where the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by §2A4.1 (Kidnapping, Abduction, Unlawful Restraint))."  Duran pled guilty to two counts: (i) one count of Possession with Intent to Distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (ii) a one-count Information charging a violation of 18 U.S.C. §§ 670(a)(6) and (b)(2)(A) and (B) for Theft of Medical Products.  See Plea Agreement ¶ 3, at 2.  As the PSR notes, these two counts were grouped pursuant to U.S.S.G. §§ 3D1.2(b) and (d), and as a result, U.S.S.G. § 2D1.1 is used to calculate the guidelines range.  Moreover, U.S.S.G. § 2D1.1 does not specifically incorporate the element of physical restraint, and the application of U.S.S.G. § 3A1.3 is therefore appropriate.  See U.S.S.G. § 2D1.1.  Accordingly, the Court overrules Duran's objection to the PSR's application of a two-level enhancement under U.S.S.G. § 3A1.3.

**IT IS ORDERED** that: Duran's objection to the PSR's imposition of a 2-level enhancement under U.S.S.G. § 3A1.3 in the Defendant's Objections to PSR and Request for Evidentiary Hearing, filed February 22, 2016 (Doc. 71), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
   United States Attorney
James D. Tierney
Joel R. Meyers
Shaheen P. Torgoley
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Todd A. Coberly
Coberly & Martinez, LLLP
Santa Fe, New Mexico

     *Attorney for the Defendant*